## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

**WALDEMAR VAZQUEZ,**

     **Plaintiff,**

**v.**

**THE RAYMOND CORPORATION, and CAROLINA HANDLING, LLC,**

     **Defendants.**

**CIVIL ACTION FILE NO.**
2:17-cv-00020-WCO

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Waldemar Vazquez ("Vazquez") and files this Complaint for Damages as follows:

### PARTIES

1.

Plaintiff Waldemar Vazquez is a resident of Gainesville, Hall County, Georgia and a citizen of the state of Georgia.

2.

Defendant The Raymond Corporation (hereinafter "Raymond") is a New York Corporation with its principal place of business in New York.

3.

Defendant Raymond advertises its products for sale to Georgia customers, sells its products to Georgia customers for use by Georgia customers, sold the subject forklift for use in Georgia, and committed a tortious act in Georgia.

4.

Defendant Raymond is not registered to transact business in the state of Georgia.

5.

Defendant Raymond may be served with process through its registered agent, Corporation Service Company, 80 State Street, Albany, New York, 12207-2543.

6.

Defendant Raymond has been duly and appropriately served as allowed by law.

7.

Defendant Carolina Handling, LLC ("Carolina Handling") is a North Carolina limited liability company with its principal place of business at 3101 Piper Ln, Charlotte, North Carolina.

8.

Defendant Carolina Handling may be served with process through its registered agent CT Corporation System, 1201 Peachtree Street NE, Fulton County, Atlanta, Georgia 30361.

9.

Defendant Carolina Handling has been duly and appropriately served as allowed by law.

10.

Venue is proper in this Court because the cause of action originated in this state and in this district.  Also, a portion of the tortious acts and omissions, as well as the injury occurred in this state and district.

11.

Plaintiff has suffered general and special damages well in excess of $75,000.00. Therefore, the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00 specified by 28 U.S.C. §1332 conferring jurisdiction in this Court.

12.

Pursuant to 28 U.S.C.A. § 1332, this Court has jurisdiction because Plaintiff is a citizen of a different state than Defendants and there exists complete diversity among the parties.

## FACTS

13.

On July 28, 2016, Plaintiff Vasquez was employed by a temp agency to operate forklifts at the Continental Tire Warehouse in Gainesville, Hall County, Georgia.

14.

On July 28, 2016, Plaintiff Vazquez was performing his normal and ordinary duties as a forklift operator at the Continental Tire warehouse facility in Gainesville, Georgia when the Raymond forklift (the "forklift") he was operating had a collision with a fixed object.

15.

During the collision event, Plaintiff Vazquez attempted to remain within the forklift's operator's compartment, but could not and, as a result, his foot was crushed between the forklift and the fixed object.

16.

Defendant Raymond designed and manufactured the forklift ("the forklift") being operated by Plaintiff Vazquez at the time of the collision event between the forklift and a fixed object.

17.

The forklift did not have a rear operator compartment safety door as standard equipment when designed and manufactured by Defendant Raymond.

18.

Defendant Carolina Handling recommended and sold the forklift to DHL, the logistics provider at the Continental Tire Warehouse.

19.

When Defendant Carolina Handling recommended and sold the forklift to DHL, the logistics provider at the Continental Tire Warehouse, it was aware that forklifts were not used to load trucks at the Continental Tire Warehouse.

20.

Because forklifts were not used to load trucks at the Continental Tire Warehouse, Defendant Carolina Handling was aware that the chance of a forklift going off of a loading dock or out of the back of a truck were minimal.

21.

DHL relied on Carolina Handling and Raymond to provide advice and guidance to help it choose appropriate and safe forklift products for use at the Continental Tire Warehouse.

22.

Defendant Carolina Handling provided service, maintenance and repair services for the forklift.

23.

Defendants Carolina Handling and Raymond provided materials to DHL relating to DHL's decision to purchase a Rear Operator Guard (door) on the forklift that included the following language:

> + May hinder or slow the operator's escape from the truck and significantly increase the chance of a serious injury in the event of a tip over or off the dock incident
> + Increase chance of amputation or serious injury of operator's foot and/or leg if operator has partially exited the compartment when a rear collision occurs
> + Increased chance of injury when operator is trapped or stuck by a damaged guard or crushed by a collapsed door pushed into the compartment
> + Increase heat build-up in compartment, which encourages improper use of the guard
> + Increase pinch or catch points for racking, product, operator's body or clothing
> + Contributes to operator discomfort
> + Will increase aisle width requirements and/or reduce operating clearances.

24.

Defendants Carolina Handling and Raymond intended for DHL to rely on the truthfulness and scientific veracity of its representations about the safety of the Rear Operator Guard in making its purchasing decisions.

25.

At the time that Defendants Carolina Handling and Raymond provided the materials to DHL relating to the decision to include a Rear Operator Guard on the forklift, the Defendants knew that these representations were false and not supported by valid science.

26.

Defendants are not aware of any documented study demonstrating that a door materially hinders or slows the operator's escape from the truck when escape is appropriate for safe use of the truck.

27.

Defendants are not aware of any documented event involving a human operator in which a door on a forklift significantly increased the severity of injury in in a tip over or off the dock incident.

28.

Defendants are not aware of any documented event involving a human operator where there was an amputation or serious injury to the operator's foot and/or leg for an operator who attempted to stay in the compartment when a rear collision occurred.

29.

Defendants are not aware of any documented event involving a human operator where the operator was trapped or stuck by a damaged guard or crushed by a collapsed door pushed into the compartment.

30.

Defendants are not aware of any documented heat build-up in the operator compartment that has encouraged improper use of the Rear Operator Guard.

31.

Defendants are not aware of any documented event in which an Rear Operator Guard served as a pinch or catch point for racking, product, the operator's body or clothing.

32.

Defendants are not aware of any documented complaints or studies demonstrating that a Rear Operator Guard contributes to operator discomfort.

33.

Defendants are not aware of any documented increase in aisle width requirements and/or reduce operating clearances required by the use of a Rear Operator Guard.

34.

In making its purchasing decisions relating to the forklift, DHL reasonably relied upon the representations made by Carolina Handling and Raymond relating to the safety of the Rear Operator Guard.

35.

As a result of its reasonable reliance on the representations made by Carolina Handling and Raymond relating to the safety of the Rear Operator Guard, DHL purchased the Raymond forklift without a Rear Operator Guard.

36.

A Rear Operator Guard can assist an operator in being aware of the confines of the operator compartment on the forklift.

37.

Being aware of the confines of the operator compartment on the forklift can assist an operator in remaining safely in the confines of the operator compartment in collision events with fixed objects.

38.

A Rear Operator Guard can protect an operator from left leg injury in the event of a collision event.

39.

Carolina Handling did not recommend that DHL purchase a Rear Operator Guard for the forklift.

40.

The forklift did not have an Operator Compartment Sensor System ("OCSS") as standard equipment when designed and manufactured by Defendant Raymond.

41.

Carolina Handling did not recommend that DHL purchase an OCSS for the forklift.

42.

Raymond did not include its OCSS on the forklift as standard equipment.

43.

Defendants Carolina Handling and Raymond provided materials to DHL relating to DHL's decision to purchase OCSS on the forklift that included the following language:

+ Increase turning radius of truck
+ Direct sunlight can adversely affect operation
+ May create operational inefficiencies, especially in cold storage situations
+ Bulky freezer gear may inadvertently trigger device
+ Frost can build up on sensors in certain environmental conditions
+ Freezer curtains can trigger device

44.

Defendants are not aware of any documented proof that the OCSS system will increase the turning radius of the truck.

45.

Defendants are aware that there are no direct sunlight issues that would affect the use of the OCSS system in the Continental Tire Warehouse.

46.

Defendants are aware that there are no cold storage issues that would affect the use of the OCSS system in the Continental Tire Warehouse.

47.

Defendants are aware that there are no frost build up issues that would affect the use of the OCSS system in the Continental Tire Warehouse.

48.

Defendants are aware that there are no freezer curtain issues that would affect the use of the OCSS system in the Continental Tire Warehouse.

49.

Defendant Carolina Handling did not recommend that DHL purchase the OCSS for the forklift.

50.

Because the forklift did not have a door (Rear Operator Guard) or similar device Plaintiff Vazquez' left leg was not retained in the confines of the operator's compartment during the collision event and he was damaged when his foot was crushed.

51.

Because the forklift did not have OCSS or a similar device Plaintiff Vazquez was not reminded, during a collision event when he most needed it, of the dimensions of the operator's compartment during the collision event and he was damaged when his foot was crushed.

52.

The forklift was designed so that it could be operated with only one foot on the floor of the operator's compartment.

53.

Had the forklift been designed so that it required both of the operator's feet to be on the floor of the forklift for it to move, and had it been designed so that if either foot was raised from the floor the forklift would have stopped, when Plaintiff Vazquez' left foot left the floor of the operator's compartment before the collision event, the forklift would have begun to stop and the collision event would either not have happened or the injury would have been less severe.

54.

As a direct and proximate result of the collision event with the fixed object, Plaintiff Vazquez sustained severe and permanent injuries, including, but not limited to, crush injuries to his foot that have required multiple surgeries aimed at avoiding amputation of his left leg below the knee.

55.

Plaintiff Vazquez has incurred medical expenses as a result of these injuries. In addition to medical expenses, Plaintiff Vazquez has suffered wage losses and lost capacity to work.

## COUNT ONE
## STRICT PRODUCTS LIABILITY AGAINST DEFENDANT RAYMOND

56.

Plaintiff realleges and incorporates by reference each of the foregoing paragraphs of the Complaint as if they were fully restated verbatim herein.

57.

Defendant Raymond designs, manufactures, markets, and sells forklifts for use and consumption, and Defendant Raymond designed, manufactured, marketed, and sold the subject forklift.

58.

The subject forklift's defects include, but are likely not limited to, defects in its design and manufacture taken individually and collectively because it did not have a system to prevent Plaintiff Vazquez' left leg from coming out from the safety of the operator's compartment to outside the forklift where it could be crushed or otherwise injured. In addition, it was designed so that the machine was able to move while portions of Plaintiff Vazquez' body, in particular his left foot, were not on the floor of the machine and were outside the operator's compartment.  The subject forklift was also defective because to the extent safety features were available as options, Defendant's warnings and instructions in the form of sales materials were false and misleading and discouraged the purchase of safety options.  Because of these defects, the subject forklift was unreasonably dangerous to a person who might reasonably be expected to use or be affected by the product.

59.

The subject forklift was defective at the time it was sold by Defendant Raymond and at the time it left Defendant Raymond's control.

60.

The subject forklift was expected to reach the user without substantial change in the condition in which it was sold.

61.

The subject forklift did reach the user without substantial change in the condition in which it was sold.

62.

Plaintiff Vazquez was a person who would reasonably be expected to use or be affected by the subject forklift, and Plaintiff Vazquez' used the subject forklift in a safe and/or foreseeable fashion.

63.

As a direct and proximate result of the defects in the subject forklift, Plaintiff Vazquez suffered injuries and damages, including medical expenses, lost income and benefits, and mental and physical pain and suffering and disfigurement.  These injuries are permanent, and in the future, Plaintiff Vazquez will suffer medical and other necessary expenses, loss of earning capacity and earnings, loss of capacity to labor, and mental and physical pain and suffering. Plaintiff Vazquez is entitled to a judgment for these damages in an amount proven at trial.

## COUNT TWO
## NEGLIGENCE AGAINST DEFENDANT RAYMOND

64.

Plaintiff realleges and incorporates by reference each of the foregoing paragraphs of the Complaint as if they were fully restated verbatim herein.

65.

Defendant Raymond was negligent in manufacturing the subject forklift in that Defendant Raymond failed to exercise reasonable care in the design process and carelessly failed to prevent the product from creating an unreasonable risk of harm to the person of one who might reasonably be expected to use or be affected by the product while it was being used in the manner the Defendant Raymond might reasonably have expected.  In particular, the subject forklift presented an unreasonable risk of harm for reasons which include, but are not limited to, the following reasons taken individually and collectively: because it did not have a system to prevent Plaintiff Vazquez' leg from coming out from the safety of the operator's compartment to outside the forklift where it could be crushed or otherwise injured. In addition, it was designed so that the machine was able to move while portions of Plaintiff Vazquez' body, in particular his left foot, were outside the operator's compartment. The subject forklift was also defective because it did not have adequate and necessary warnings and

instructions to allow it selected and purchased and to be used safely given the design and/or manufacturing defects and dangers inherent in the subject forklift.

66.

As a direct and proximate result of the Defendant Raymond's negligence in causing defects in the subject forklift, Plaintiff Vazquez suffered injuries and damages, including medical expenses, lost income and benefits, and mental and physical pain and suffering and disfigurement.  These injuries are permanent, and, in the future, Plaintiff Vazquez will suffer medical and other necessary expenses, loss of earning capacity and earnings, loss of capacity to labor, and mental and physical pain and suffering. Plaintiff Vazquez is entitled to a judgment for these damages in an amount proven at trial.

**COUNT THREE**
**PUNITIVE DAMAGES AGAINST DEFENDANT RAYMOND**

67.

Plaintiff realleges and incorporates by reference each of the foregoing paragraphs of the Complaint as if they were fully restated verbatim herein.

68.

Defendant Raymond is aware that hundreds of users of its similar forklifts, designed and intended exclusively for warehouse use, have suffered lower extremity injuries as a result of their left leg not being restrained in the operator's

compartment in similarly designed forklifts.  Despite this knowledge, Defendant Raymond has stubbornly refused to modify its design to eliminate this risk and instead has continued to sell these forklifts that are in a defective and unreasonably dangerous condition based on "science" and other reasons it knows do not justify its decisions and which were made for financial reasons not safety goals. Furthermore, Defendant has distributed information that it knows is false relating to the safety of its design and the utility of a change in the design to protect users.  Its continued sale of tis defective products, including the subject forklift, in a unreasonably dangerous condition after it knew or should have known of the defects and dangers, exhibits an entire lack of care and a conscious disregard for the safety of humans who use or are affected by Defendant Raymond's forklifts, including Plaintiff.

69.

As a direct and proximate result of Defendant Raymond's wrongful conduct, Plaintiff is entitled to judgment against Defendant Raymond for exemplary damages to deter similar conduct in the future and to punish Defendant Raymond for its wrongful acts, in an amount to be determined by the enlightened conscience of the finder of fact.  Plaintiff is entitled to a judgment for these damages in an amount proven at trial.

## COUNT FOUR
## NEGLIGENCE AGAINST DEFENDANT CAROLINA HANDLING

70.

Plaintiff realleges and incorporates by reference each of the foregoing paragraphs of the Complaint as if they were fully restated verbatim herein.

71.

Defendant Carolina Handling negligently failed to suggest to DHL that it purchase necessary safety options for the forklift.

72.

As a direct and proximate result of the Defendant Carolina Handling's negligence, Plaintiff Vazquez suffered injuries and damages, including medical expenses, lost income and benefits, and mental and physical pain and suffering and disfigurement.  These injuries are permanent, and, in the future, Plaintiff Vazquez will suffer medical and other necessary expenses, loss of earning capacity and earnings, loss of capacity to labor, and mental and physical pain and suffering. Plaintiff Vazquez is entitled to a judgment for these damages in an amount proven at trial.

**WHEREFORE**, Plaintiff prays that summons issue, that Defendants be served and made to appear and answer, that a JURY TRIAL be held, and that

Plaintiff be awarded judgment in Plaintiff's favor and against Defendants, as follows:

(a)     Under Counts One, Two, and Four that Plaintiff Vazquez be awarded special and general damages against Defendants in an amount to be proven at trial;

(b)     Under Count Three that Plaintiff Vazquez be awarded punitive damages in an amount sufficient to punish and deter Defendants;

(c)     That the cost of this action be levied against Defendants; and,

(d)     That Plaintiff be awarded such other and further relief as this Court deems just and proper.

Respectfully submitted,
WARSHAUER LAW GROUP, P.C.

By: *Michael J. Warshauer*
Michael J. Warshauer
Georgia Bar No. 018720
Trent Shuping
Georgia Bar No. 159083

2740 Bert Adams Road
Atlanta, GA 30339
(404) 892-4900
(404) 892-1020 Fax
mjw@warlawgroup.com
tss@warlawgroup.com

MICHAEL R. CASPER, P.C.

By: *Michael R. Casper /mjw*

Michael R. Casper
Georgia Bar No. 116000
*Attorneys for Plaintiff*

418 Candler Street
Gainesville, GA 30501
(770) 534-4376
(770) 535-1903
mrcasperlaw@hotmail.com