**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

WALDEMAR VAZQUEZ,                    :
                                     :
        Plaintiff,                   :
                                     :
v.                                   :        CIVIL ACTION NO.
                                     :        2:17-CV-20-RWS
THE RAYMOND                          :
CORPORATION, et al.,                 :
                                     :
        Defendants.                  :

## ORDER

This matter is before the Court on Plaintiff's Motion to Strike Cathlin Vinett Mitchell as an Expert [Doc. No. 96], Defendants' Motion to Exclude the Testimony of Ruston Hunt [Doc. No. 97], Defendants' Motion to Exclude the Testimony of Jason Kerrigan [Doc. No. 98], Defendants' Motion to Exclude the Testimony of Thomas Berry [Doc. No. 99], Defendants' Motion for Summary Judgment [Doc. No. 100], and Plaintiff's Motion for Leave to File Surreply [Doc. No. 163].

## I.    Factual Background

This is a product liability action in which Plaintiff seeks to hold Defendant Raymond Corporation and Defendant Carolina Handling responsible for injuries

AO 72A
(Rev.8/8
2)

he sustained in an accident on July 28, 2016, while he was operating a Raymond 4250 Stand-Up Counterbalanced list truck ("4250 forklift") in the course of his employment at a Continental Tire Warehouse in Gainesville, Georgia. Defendant Raymond designed, manufactured, marketed, and sold the 4250 forklift to Defendant Carolina Handling. In turn, Defendant Carolina Handling rented the 4250 forklift to DHL, the logistics provider at the Continental Tire Warehouse.

Plaintiff Vazquez was employed by Randstad, a temporary labor provider used by DHL to provide employees to Continental Tire. At the time of the accident, Plaintiff was using the 4250 forklift to pick up a full pallet of tires. He was traveling tractor first (or "forks trailing") when he turned to speak with another employee while the forklift was still moving. When he did so, he lost control of the forklift and crashed into a metal column. Plaintiff's left foot was crushed because it was outside of the operator compartment at the time of the collision.

On January 31, 2017, Plaintiff filed this action [Doc. No. 1]. He asserts three causes of action: (1) a design defect claim against Defendant Raymond; (2) a manufacturing defect and failure to warn claim against Defendant Raymond; and (3) a negligence claim against Defendant Carolina Handling for failing to suggest

AO 72A
(Rev.8/8
2)

to DHL that it purchase necessary safety options for the forklift. Plaintiff seeks punitive damages against Defendant Raymond. Defendants have now moved for summary judgment on Plaintiff's claims [Doc. No. 100].

## II. Plaintiff's Motion to Strike Cathlin Vinett Mitchell as an Expert [Doc. No. 96]

Plaintiff has moved to strike Cathlin Vinett Mitchell as an expert because he contends that Defendants' initial Rule 26 disclosure did not comply with Federal Rule of Civil Procedure 26(a)(2)(B). Disclosures under Rule 26(a)(2)(B) are necessary to allow the opposing party "a reasonable opportunity to prepare for effective cross examination." Jacobsen v. Desert Book Co., 287 F.3d 936, 953 (10th Cir. 2002). The list of cases in which an expert has previously testified should include the court and the case number. See Nguyen v. IBP, Inc. 162 F.R.D. 675, 682 (D.Kan.1995); Baca v. Depot Sales, LLC., No. 06-CV-714-EWN-PAC, 2007 WL 951163, at *1 (D. Colo. Mar. 27, 2007). Defendants' failure to include this information in the initial disclosure constitutes a violation of Rule 26.

However, the Court notes that Defendants acted quickly to remedy this failure, and Plaintiff now has an updated list of prior testimony, complete with the case caption, court name, and civil action number that Plaintiff complains was

3

initially lacking. This was done well in advance of Mitchell's deposition. Plaintiff has not been harmed or prejudiced. Under these circumstances, an award of fees and expenses is not justified. His Motion to Strike [Doc. No. 96] is DENIED.

### III. Defendants' Motion to Exclude the Testimony of Ruston Hunt [Doc. No. 97]

Defendants have moved to exclude the testimony of Dr. Ruston Hunt. Defendants contend that Dr. Hunt should not be allowed to testify because he lacks the qualifications necessary to give opinion testimony and because his opinions are unreliable.

### A.   **_Daubert_ Standard**

Federal Rule of Evidence 702 governs the admissibility of proposed expert evidence:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The trial court, as the gate-keeper, must determine that the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a

AO 72A
(Rev.8/8
2)

factual dispute." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 591 (1993) (quoting United States v . Downing , 753 F.2d 1224, 1242 (3d Cir. 1985)). The trial court must also "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. Ltd. v. Carmichel, 526 U.S. 137, 152 (1999). The Eleventh Circuit has synthesized the existing rules into a three-part inquiry, instructing courts to consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 562 (11th Cir. 1998), reh'g and reh'g en banc denied, 172 F.3d 884 (1999).

With respect to the reliability of expert testimony, relevant factors include "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is

AO 72A
(Rev.8/8
2)

generally accepted in the scientific community." U.S. v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (quoting Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003)). "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." Id. It is important to note that "expert testimony that does not meet all or most of the Daubert factors may sometimes be admissible." U.S. v. Brown, 415 F.3d 1257, 1268 (11th Cir. 2005). The Court will address Dr. Hunt's qualifications and then his opinions in turn.

## B.    Dr. Hunt's Qualifications

Dr. Hunt is clearly qualified to testify generally as a human factors and warnings expert.

> He has a bachelor's and master's degree in industrial engineering and a PhD. In mechanical engineering. At both the undergraduate and graduate level, he has taught courses dealing with human factors, engineering design and analysis, and human interaction with machinery. Hunt has served as an expert in numerous cases and offered opinions concerning human reaction time and the viability of warnings.

Hernandez v. Crown Equipment Corp., 92 F.Supp.3d 1325, 1350 (M.D. Ga. 2015).

But Dr. Hunt is not qualified to offer design defect opinions. The record in

AO 72A
(Rev.8/8
2)

this case does not indicate that Dr. Hunt has training, education, or experience in designing forklifts or similar products. He has never designed a forklift or any component thereof. He is not and has never been a member of any committee which authors safety standards for stand-up forklifts. He has never been employed by or consulted with a forklift manufacturer. He has done no independent work, including tests, surveys, or photography, to support his opinion that adding a latching and interlocked rear operator guard as standard equipment is an appropriate design for a stand-up forklift. As a result, Dr. Hunt is clearly not qualified to testify regarding design defects.

### C. Dr. Hunt's First Opinion

First, Dr. Hunt opines:

> Because of the ability to guard or design out the collision injury danger with a safety door, Raymond should not use warnings but instead it should change the design and guarding to protect users from the hazard of collisions and the risk of leg crush injuries.

[Doc. No. 117-1, p. 32]. The Court finds that Dr. Hunt may testify regarding his opinion that Raymond should not use warnings because it should change the design, relying on the opinion of Thomas Berry. However, he may not provide his own opinions regarding design.

AO 72A
(Rev.8/8
2)

**D.    Dr. Hunt's Second Opinion**

Second, Dr. Hunt opines: "Raymond should not sell these machines without safety doors or suggest that operators bail off in the event of tip-over or off-dock situations" [Doc. No. 117-1, p. 34].  As discussed above, Dr. Hunt is unqualified to offer design defect opinions.  But the Court will allow Dr. Hunt to testify about the bailing off instructions and their potential effect upon users of the stand-up forklift in this case.

**E.    Dr. Hunt's Third Opinion**

Third, Dr. Hunt opines:

> The tests relied upon by various experts to support their opinions that operators should bail off forklifts in the event of tip-over or off-dock situations, conducted using ATD dummies, are not realistic representations of human conduct and should not be used in the design process of standup forklift products.

[Doc. No. 117-1, p. 36].  However, Dr. Hunt admits that he is not an expert on these dummies.  The Court will not allow this testimony.

**F.    Dr. Hunt's Fourth Opinion**

Finally, Dr. Hunt opines: "The injury incurred by Mr. Vazquez would have been prevented if his rear-entry, stand-up forklift had been equipped with a rear guard/door as discussed herein" [Doc. No. 117-1, p. 38].  This is a quintessential

AO 72A
(Rev.8/8
2)

design defect and accident reconstruction opinion. The Court will not allow this testimony.

### G.    Conclusion

For the reasons discussed above, Defendants' Motion to Exclude the Testimony of Dr. Ruston Hunt [Doc. No. 97] is GRANTED in part and DENIED in part.

## IV.    Defendants' Motion to Exclude Testimony of Jason Kerrigan [Doc. No. 98]

Defendants have moved to exclude the testimony of Dr. Jason Kerrigan. They argue that he has no background or credentials that qualify him to render opinions regarding the propriety of using ATD testing in the context of forklifts, and has not performed any studies or testing in support of his opinion. The Court notes that pursuant to an earlier Court order, Dr. Kerrigan's testimony is limited to rebuttal testimony as contemplated by Federal Rule of Civil Procedure 26 [Doc. No. 120]. The Court will address Dr. Kerrigan's qualifications and then his opinions.

### A.    Dr. Kerrigan's Qualifications

Dr. Kerrigan holds a Ph.D. and M.E. in Mechanical and Aerospace

Engineering from the University of Virginia ("UVA"). He is an Assistant Professor in Mechanical and Aerospace Engineering at UVA, School of Engineering and Applied Science, and the Deputy Director of UVA's Center for Applied Biomechanics. He has experience working with human body models and ATD devices. He is qualified to testify regarding ATD testing and in setting up, using, and interpreting MADYMO studies.

### B. Dr. Kerrigan's Opinions

The Court will not discuss each of Dr. Kerrigan's nine opinions individually. However, the Court finds that Dr. Kerrigan will be allowed to testify in rebuttal regarding ATD testing. Dr. Kerrigan can provide testimony regarding Defendants' experts' opinions based on the ATD studies that the Court believes Defendants will introduce at trial. The proper remedy for Defendants' concerns about Dr. Kerrigan is to challenge the weight of the testimony and his credibility at trial.

### C. Conclusion

Defendants' Motion to Exclude the Testimony of Jason Kerrigan [Doc. No. 98] is DENIED.

AO 72A
(Rev.8/8
2)

**V.** **Defendants' Motion to Exclude the Testimony of Thomas Berry [Doc. No. 99]**

Defendants have moved to exclude the testimony of Mr. Thomas Berry. They argue that his opinions should be excluded because: (1) he lacks the appropriate qualifications and industry experience to render opinions on forklift design; (2) his opinions are supported by no reliable scientific methodology of and kind; and (3) his opinions are almost universally rejected by the relevant scientific community.

**A.** **Mr. Berry's Qualifications**

The Court finds that Mr. Berry is qualified to offer the opinions he has reached.

> He has both a bachelor's and a master's degree in mechanical engineering. He also has "significant experience in forklift design and forklift accidents of the type at issue in this case." <u>Congilaro v. Crown Equip. Co.</u>, No. 5:09-CV-1452, 2012 WL 3821952, at *3 (N.D.N.Y. Sept. 4, 2012) (involving a plaintiff who suffered a lower left leg injury while operating a Crown stand-up forklift). Berry has conducted over two hundred investigations dealing with injuries to drivers of stand-up forklifts, and has reviewed thousands of accident reports from various forklift manufacturers, OSHA, and state agencies. His analysis and research in the area of forklift accidents were the subject of a peer-reviewed paper he presented to the American Society of Mechanical Engineers ("ASME") in 2011.

<u>Hernandez</u>, 92 F.Supp.3d at 1345. The Court further finds that Mr. Berry's

11

AO 72A
(Rev.8/8
2)

opinions are scientifically valid, relevant, and will aid the jury. Therefore, Mr. Berry will be permitted to offer his opinions.

### B. Mr. Berry's Opinions

Defendants argue that Mr. Berry should not be permitted to testify regarding ATD testing because the Court has ruled that Dr. Kerrigan will be permitted to testify on the subject as a rebuttal witness. Defendants assert that allowing Mr. Berry to testify about ATD testing in the case-in-chief and then allowing Dr. Kerrigan to testify on the same subject as a rebuttal witness would result in inappropriate bolstering. Defendants point is well-taken. If Mr. Berry testifies about ATD testing in Plaintiff's case-in-chief, Dr. Kerrigan's testimony may well be cumulative and/or merely bolstering as a rebuttal witness. If this occurs, Defendants may raise the issue at trial, and the Court will address it in the context of the trial at that time.

### C. Conclusion

For the reasons discussed above, Defendants' Motion to Exclude the Testimony of Thomas Berry [Doc. No. 99] is DENIED.

AO 72A
(Rev.8/8
2)

**VI.    Defendants' Motion for Summary Judgment [Doc. No. 100] and Plaintiff's Motion for Leave to File Surreply [Doc. No. 163]**

Defendants have moved for summary judgment [Doc. No. 100]. As an initial matter, Plaintiff requested leave to file a surreply brief [Doc. No. 163]. Plaintiff's Motion [Doc. No. 163] is GRANTED. The Court will set forth the legal standard for summary judgment and then address Defendants' arguments in turn.

**A.    Legal Standard**

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present

13

affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical

14

doubt as to the material facts").

## B.    Summary Judgment Arguments

Defendants' Motion for Summary Judgment relies upon their Motions to Exclude Plaintiff's experts Dr. Hunt, Dr. Kerrigan, and Mr. Berry.  Defendants argue that without this expert testimony, Plaintiff would be left without a liability expert and without any evidentiary support concerning defect and causation.

### i.    Plaintiff's Theories of Recovery

Plaintiff asserts two theories of recovery: negligence and strict liability. Under Georgia law, the essential elements of a negligence claim are: (1) a legal duty to conform to a standard of conduct; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage from the breach.  Davis v. Blockbuster, Inc., 575 S.E.2d 1, 2 (Ga. Ct. App. 2002).

Whether brought under a negligence or strict liability theory, the "*sine qua non* of a products liability claim . . . is a defect in the product."  Boswell v. Overhead Door Corp., 664 S.E.2d 262, 263 (Ga. Ct. App. 2008).  Because a manufacturer is "not an insurer that its product is, from a design viewpoint, incapable of producing injury," a plaintiff must prove a defect and that the defect

AO 72A
(Rev.8/8
2)

was the proximate cause of his injury.  Banks v. ICI Americas, Inc., 450 S.E.2d 671, 675 (Ga. 1994); Fouch v. Bicknell Supply Co., 756 S.E.2d 682, 687 (Ga. Ct. App. 2014).

The Georgia Supreme Court has held that O.C.G.A. § 51-1-11 imposes strict liability for defective products.  Ctr. Chem. Co. v. Parzini, 218 S.E.2d 580, 582 (Ga. 1975).  To establish a claim of strict liability, a plaintiff must demonstrate that, when sold, a defendant's product was "not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained."  O.C.G.A. § 51-1-11(b)(1).

A plaintiff can base its strict liability claim on one of three categories of product defects: manufacturing, design, and marketing/packaging.  Banks, 450 S.E.2d at 672.  For each category, the questions are the same: "whether a product was defective, and if so, whether the defect was the proximate cause of a plaintiff's injury."  S K Hand Tool Corp. v. Lowman, 479 S.E.2d 103, 106 (Ga. Ct. App. 1996).

A manufacturing defect generally "results from an error specifically in the fabrication process, as distinct from an error in the design process."  Fletcher v. Water Applications Distrib. Grp., Inc., 773 S.E.2d 859, 863 (Ga. Ct. App. 2015)

16

(citation omitted). Under a manufacturing defect claim, "it is assumed that the design of the product is safe and had the product been manufactured in accordance with the design it would have been safe for consumer use." Id. at 863 (quoting Banks, 450 S.E.2d at 673). A manufacturing defect is one that is "measure[able] against a built-in objective standard or norm of proper manufacture." Banks, 450 S.E.2d at 673, n.2 (quoting Bowman v. Gen. Motors Corp., 427 F. Supp. 234, 241 (E.D. Penn. 1977)). "Thus, by definition, a manufacturing defect will always be identifiable as a deviation . . . or departure from the manufacturer's specifications established for the creation of the product." Jones v. Amazing Prods., Inc., 231 F.Supp.2d 1228, 1236 (N.D. Ga. 2002).

In contrast, in design cases, "the entire product line may be called into question." Banks, 450 S.E.2d at 673. The Court must consider "whether the manufacturer acted reasonably in choosing a particular product design, given . . . the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to eliminate the risk." Id. The Georgia Supreme Court has identified the following non-exhaustive list of factors to be considered as part of this risk-utility analysis:

the usefulness of the product, the gravity and severity of the danger

17

> posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasability of spreading the loss in the setting of the product's price or by purchasing insurance.

Banks, 450 S.E.2d at 675 n.6. Plaintiff's claim is based on an alleged design defect.

To prevail on a failure to warn claim, a plaintiff must show that: (1) the defendant had a duty to warn; (2) the defendant breached that duty; and (3) the breach proximately caused his injuries. Wheat v. Sofamor, S.N.C., 46 F.Supp.2d 1351, 1363 (N.D. Ga. 1999). A manufacturer's duty to warn arises only when it knows or reasonably should know of a danger from its product's use. Chrysler Corp. v. Batten, 450 S.E.2d 208, 211 (Ga. 1994). This analysis further depends upon "the foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger." Giordano v. Ford Motor Co., 299 S.E.2d 897, 899 (Ga. Ct. App. 1983) (citing Greenway v. Peabody Int'l Corp., 294 S.E.2d 541 (Ga. Ct. App. 1982)). "There is no duty to warn where it appears that the person using the product should know of the danger, or in using

18

the product discover the danger." <u>Cochran v. Brinkmann Corp.</u>, No. 1:08-CV-1790-WSD, 2009 WL 4823854, at *6 (N.D. Ga. Dec. 9, 2009). "The plaintiff asserting a failure to warn claim bears the burden of demonstrating that the danger causing injury was latent, not patent." <u>Id.</u>

Here, a number of factual disputes preclude summary judgment on the design defect claims. Specifically, Plaintiff has provided evidence that a safer, alternative design existed when Defendant Raymond manufactured the forklift at issue here, that Raymond's design posed a grave risk of lower leg injury for operators, and that this danger could have been avoided or at least greatly minimized without impairing the usefulness of the forklift or making it significantly more expensive to purchase. In general, the weighing of the risk-utility factors is to be done by the trier of fact. Similarly, there are factual issues as to the failure to warn claim. As a result, Defendants' Motion for Summary Judgment [Doc. No. 100] is DENIED as to the design defect claims and as to the failure to warn claim.

### ii.    Punitive Damages

Plaintiff also seeks punitive damages. In Georgia, there may be an award for punitive damages in a tort action only if "it is proven by clear and convincing

19

AO 72A
(Rev.8/8
2)

evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences." O.C.G.A. § 51-12-5.1(b). To receive punitive damages, a plaintiff must show more than gross negligence because punitive damages are designed to punish wrongdoing by the defendant, not compensate the plaintiff for his injuries. <u>Mastec N. Amer., Inc. v. Wilson</u>, 755 S.E.2d 257, 259 (Ga. Ct. App. 2014); O.C.G.A. § 51-12-5.1(c). Thus, the Supreme Court of Georgia has held that, as a general rule, punitive damages are "improper where a defendant has adhered" to the relevant safety regulations and industry standards. <u>Stone Man, Inc. v. Green</u>, 435 S.E.2d 470, 472 (Ga. Ct. App. 1993).

There is no evidence that would justify an award of punitive damages in this case. It is undisputed that the forklift at issue here was designed in compliance with all applicable standards and regulations, including ANSI and OSHA. Moreover, Defendant Raymond points out that its decision not to equip the forklift with a latching rear door was made because such a door would decrease the overall safety of the forklift. Finding engineers who disagree with Defendant's choice in trading one danger for another is not enough. Defendants' Motion for Summary

Judgment [Doc. No. 100] is GRANTED as to punitive damages.

**VI.    Conclusion**

For the reasons discussed above:

(1)     Plaintiff's Motion to Strike Cathlin Vinett Mitchell as an Expert [Doc. No. 96] is DENIED;

(2)     Defendants' Motion to Exclude the Testimony of Ruston Hunt [Doc. No. 97] is GRANTED in part and DENIED in part;

(3)     Defendants' Motion to Exclude the Testimony of Jason Kerrigan [Doc. No. 98] is DENIED;

(4)     Defendants' Motion to Exclude the Testimony of Thomas Berry [Doc. No. 99] is DENIED;

(5)     Defendants' Motion for Summary Judgment [Doc. No. 100] is GRANTED in part and DENIED in part; and

(6)     Plaintiff's Motion for Leave to File Surreply [Doc. No. 163] is GRANTED.

Additionally, the Court notes that according to the brief in opposition to summary judgment, the parties have agreed to dismiss Carolina Handling as a Defendant in this action [Doc. No. 121, p. 1 n.1]. However, the parties have not

AO 72A
(Rev.8/8
2)

yet filed a joint stipulation of dismissal. For clarity of the record, the parties should do so as soon as possible.

The parties are ORDERED to file their proposed consolidated pretrial order no later than April 6, 2018 [Doc. No. 94].

Other pending motions will be addressed by later order.

**SO ORDERED**, this 11th day of January, 2019.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/8
2)