# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| WALDEMAR VAZQUEZ,<br><br>　　Plaintiff,<br><br>v.<br><br>THE RAYMOND CORPORATION,<br><br>　　Defendant. | CIVIL ACTION<br>FILE NO.  2:17-CV-00020-RWS |

**FIRST AMENDED COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Waldemar Vazquez ("Vazquez") and files this Complaint for Damages as follows:

**PARTIES**

1.

Plaintiff Waldemar Vazquez is a resident of Gainesville, Hall County, Georgia and a citizen of the state of Georgia.

2.

Defendant The Raymond Corporation (hereinafter "Raymond") is a New York Corporation with its principal place of business in New York.

3.

Defendant Raymond advertises its products for sale to Georgia customers, sells its products to Georgia customers for use by Georgia customers, sold the subject forklift for use in Georgia, and committed a tortious act in Georgia.

4.

Defendant Raymond is not registered to transact business in the state of Georgia.

5.

Defendant Raymond may be served with process through its registered agent, Corporation Service Company, 80 State Street, Albany, New York, 12207-2543.

6.

Defendant Raymond has been duly and appropriately served as allowed by law.

7.

Omitted.

8.

Omitted.

9.

Omitted.

10.

Venue is proper in this Court because the cause of action originated in this state and in this district. Also, a portion of the tortious acts and omissions, as well as the injury occurred in this state and district.

11.

Plaintiff has suffered general and special damages well in excess of $75,000.00. Therefore, the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00 specified by 28 U.S.C. §1332 conferring jurisdiction in this Court.

12.

Pursuant to 28 U.S.C.A. § 1332, this Court has jurisdiction because Plaintiff is a citizen of a different state than Defendants and there exists complete diversity among the parties.

## FACTS

13.

On July 28, 2016, Plaintiff Vasquez was employed by a temp agency to operate forklifts at the Continental Tire Warehouse in Gainesville, Hall County, Georgia.

14.

On July 28, 2016, Plaintiff Vazquez was performing his normal and ordinary duties as a forklift operator at the Continental Tire warehouse facility in Gainesville, Georgia when the Raymond forklift (the "forklift") he was operating had a collision with a fixed object.

15.

During the collision event, Plaintiff Vazquez attempted to remain within the forklift's operator's compartment, but could not and, as a result, his foot was crushed between the forklift and the fixed object.

16.

Defendant Raymond designed and manufactured the forklift ("the forklift") being operated by Plaintiff Vazquez at the time of the collision event between the forklift and a fixed object.

17.

The forklift did not have a rear operator compartment safety door as standard equipment when designed and manufactured by Defendant Raymond.

18.

A company named Carolina Handling recommended and sold the forklift to DHL, the logistics provider at the Continental Tire Warehouse.

19.

When Carolina Handling recommended and sold the forklift to DHL, the logistics provider at the Continental Tire Warehouse, it was aware that forklifts were not used to load trucks at the Continental Tire Warehouse.

20.

Because forklifts were not used to load trucks at the Continental Tire Warehouse, Carolina Handling was aware that the chance of a forklift going off of a loading dock or out of the back of a truck were minimal.

21.

DHL relied on Carolina Handling and Raymond to provide advice and guidance to help it choose appropriate and safe forklift products for use at the Continental Tire Warehouse.

22.

Omitted.

23.

Defendant Raymond provided materials to DHL relating to DHL's decision to purchase a Rear Operator Guard (door) on the forklift that included the following language:

> + May hinder or slow the operator's escape from the truck and significantly increase the chance of a serious injury in the event of a tip over or off the dock incident
> + Increase chance of amputation or serious injury of operator's foot

and/or leg if operator has partially exited the compartment when a rear collision occurs
+ Increased chance of injury when operator is trapped or stuck by a damaged guard or crushed by a collapsed door pushed into the compartment
+ Increase heat build-up in compartment, which encourages improper use of the guard
+ Increase pinch or catch points for racking, product, operator's body or clothing
+ Contributes to operator discomfort
+ Will increase aisle width requirements and/or reduce operating clearances.

24.

Defendant Raymond intended for DHL to rely on the truthfulness and scientific veracity of its representations about the safety of the Rear Operator Guard in making its purchasing decisions.

25.

At the time that Defendant Raymond provided the materials to DHL relating to the decision to include a Rear Operator Guard on the forklift, the Defendants knew that these representations were false and not supported by valid science.

26.

Defendant is not aware of any documented study demonstrating that a door materially hinders or slows the operator's escape from the truck when escape is appropriate for safe use of the truck.

27.

Defendant is not aware of any documented event involving a human operator in which a door on a forklift significantly increased the severity of injury in in a tip over or off the dock incident.

28.

Defendant is not aware of any documented event involving a human operator where there was an amputation or serious injury to the operator's foot and/or leg for an operator who attempted to stay in the compartment when a rear collision occurred.

29.

Defendant is not aware of any documented event involving a human operator where the operator was trapped or stuck by a damaged guard or crushed by a collapsed door pushed into the compartment.

30.

Defendant is not aware of any documented heat build-up in the operator compartment that has encouraged improper use of the Rear Operator Guard.

31.

Defendant is not aware of any documented event in which an Rear Operator Guard served as a pinch or catch point for racking, product, the operator's body or clothing.

32.

Defendant is not aware of any documented complaints or studies demonstrating that a Rear Operator Guard contributes to operator discomfort.

33.

Defendant is not aware of any documented increase in aisle width requirements and/or reduce operating clearances required by the use of a Rear Operator Guard.

34.

In making its purchasing decisions relating to the forklift, DHL reasonably relied upon the representations made by Raymond relating to the safety of the Rear Operator Guard.

35.

As a result of its reasonable reliance on the representations made by Raymond relating to the safety of the Rear Operator Guard, DHL purchased the Raymond forklift without a Rear Operator Guard.

36.

A Rear Operator Guard can assist an operator in being aware of the confines of the operator compartment on the forklift.

37.

Being aware of the confines of the operator compartment on the forklift can assist an operator in remaining safely in the confines of the operator compartment in collision events with fixed objects.

38.

A Rear Operator Guard can protect an operator from left leg injury in the event of a collision event.

39.

Omitted.

40.

The forklift did not have an Operator Compartment Sensor System ("OCSS") as standard equipment when designed and manufactured by Defendant Raymond.

41.

Omitted.

42.

Raymond did not include its OCSS on the forklift as standard equipment.

43.

Defendant Raymond provided materials to DHL relating to DHL's decision to purchase OCSS on the forklift that included the following language:

+ Increase turning radius of truck

+ Direct sunlight can adversely affect operation
+ May create operational inefficiencies, especially in cold storage situations
+ Bulky freezer gear may inadvertently trigger device
+ Frost can build up on sensors in certain environmental conditions
+ Freezer curtains can trigger device

44.

Defendant is not aware of any documented proof that the OCSS system will increase the turning radius of the truck.

45.

Defendant is aware that there are no direct sunlight issues that would affect the use of the OCSS system in the Continental Tire Warehouse.

46.

Defendant is aware that there are no cold storage issues that would affect the use of the OCSS system in the Continental Tire Warehouse.

47.

Defendant is aware that there are no frost build up issues that would affect the use of the OCSS system in the Continental Tire Warehouse.

48.

Defendant is aware that there are no freezer curtain issues that would affect the use of the OCSS system in the Continental Tire Warehouse.

49.

Omitted.

50.

Because the forklift did not have a door (Rear Operator Guard) or similar device Plaintiff Vazquez' left leg was not retained in the confines of the operator's compartment during the collision event and he was damaged when his foot was crushed.

51.

Because the forklift did not have OCSS or a similar device Plaintiff Vazquez was not reminded, during a collision event when he most needed it, of the dimensions of the operator's compartment during the collision event and he was damaged when his foot was crushed.

52.

The forklift was designed so that it could be operated with only one foot on the floor of the operator's compartment.

53.

Had the forklift been designed so that it required both of the operator's feet to be on the floor of the forklift for it to move, and had it been designed so that if either foot was raised from the floor the forklift would have stopped, when Plaintiff Vazquez' left foot left the floor of the operator's compartment before the

collision event, the forklift would have begun to stop and the collision event would either not have happened or the injury would have been less severe.

54.

As a direct and proximate result of the collision event with the fixed object, Plaintiff Vazquez sustained severe and permanent injuries, including, but not limited to, crush injuries to his foot that have required multiple surgeries aimed at avoiding amputation of his left leg below the knee.

55.

Plaintiff Vazquez has incurred medical expenses as a result of these injuries. In addition to medical expenses, Plaintiff Vazquez has suffered wage losses and lost capacity to work.

## COUNT ONE
## STRICT PRODUCTS LIABILITY AGAINST DEFENDANT RAYMOND

56.

Plaintiff realleges and incorporates by reference each of the foregoing paragraphs of the Complaint as if they were fully restated verbatim herein.

57.

Defendant Raymond designs, manufactures, markets, and sells forklifts for use and consumption, and Defendant Raymond designed, manufactured, marketed, and sold the subject forklift.

58.

The subject forklift's defects include, but are likely not limited to, defects in its design and manufacture taken individually and collectively because it did not have a system to prevent Plaintiff Vazquez' left leg from coming out from the safety of the operator's compartment to outside the forklift where it could be crushed or otherwise injured. In addition, it was designed so that the machine was able to move while portions of Plaintiff Vazquez' body, in particular his left foot, were not on the floor of the machine and were outside the operator's compartment. The subject forklift was also defective because to the extent safety features were available as options, Defendant's warnings and instructions in the form of sales materials were false and misleading and discouraged the purchase of safety options.  Because of these defects, the subject forklift was unreasonably dangerous to a person who might reasonably be expected to use or be affected by the product.

59.

The subject forklift was defective at the time it was sold by Defendant Raymond and at the time it left Defendant Raymond's control.

60.

The subject forklift was expected to reach the user without substantial change in the condition in which it was sold.

61.

The subject forklift did reach the user without substantial change in the condition in which it was sold.

62.

Plaintiff Vazquez was a person who would reasonably be expected to use or be affected by the subject forklift, and Plaintiff Vazquez' used the subject forklift in a safe and/or foreseeable fashion.

63.

As a direct and proximate result of the defects in the subject forklift, Plaintiff Vazquez suffered injuries and damages, including medical expenses, lost income and benefits, and mental and physical pain and suffering and disfigurement. These injuries are permanent, and in the future, Plaintiff Vazquez will suffer medical and other necessary expenses, loss of earning capacity and earnings, loss of capacity to labor, and mental and physical pain and suffering.  Plaintiff Vazquez is entitled to a judgment for these damages in an amount proven at trial.

## COUNT TWO

64.

Plaintiff realleges and incorporates by reference each of the foregoing paragraphs of the Complaint as if they were fully restated verbatim herein.

65.

Omitted.

66.

Omitted.

## COUNT THREE
## PUNITIVE DAMAGES AGAINST DEFENDANT RAYMOND

67.

Plaintiff realleges and incorporates by reference each of the foregoing paragraphs of the Complaint as if they were fully restated verbatim herein.

68.

Defendant Raymond is aware that hundreds of users of its similar forklifts, designed and intended exclusively for warehouse use, have suffered lower extremity injuries as a result of their left leg not being restrained in the operator's compartment in similarly designed forklifts. Despite this knowledge, Defendant Raymond has stubbornly refused to modify its design to eliminate this risk and instead has continued to sell these forklifts that are in a defective and unreasonably

dangerous condition based on "science" and other reasons it knows do not justify its decisions and which were made for financial reasons not safety goals. Furthermore, Defendant has distributed information that it knows is false relating to the safety of its design and the utility of a change in the design to protect users. Its continued sale of tis defective products, including the subject forklift, in a unreasonably dangerous condition after it knew or should have known of the defects and dangers, exhibits an entire lack of care and a conscious disregard for the safety of humans who use or are affected by Defendant Raymond's forklifts, including Plaintiff.

69.

As a direct and proximate result of Defendant Raymond's wrongful conduct, Plaintiff is entitled to judgment against Defendant Raymond for exemplary damages to deter similar conduct in the future and to punish Defendant Raymond for its wrongful acts, in an amount to be determined by the enlightened conscience of the finder of fact. Plaintiff is entitled to a judgment for these damages in an amount proven at trial.

## COUNT FOUR

70.

Plaintiff realleges and incorporates by reference each of the foregoing paragraphs of the Complaint as if they were fully restated verbatim herein.

71.

Omitted.

72.

Omitted.

**WHEREFORE**, Plaintiff prays that summons issue, that Defendants be served and made to appear and answer, that a JURY TRIAL be held, and that Plaintiff be awarded judgment in Plaintiff's favor and against Defendants, as follows:

(a) Under Counts One, that Plaintiff Vazquez be awarded special and general damages against Defendants in an amount to be proven at trial;

(b) Under Count Three that Plaintiff Vazquez be awarded punitive damages in an amount sufficient to punish and deter Defendants;

(c) That the cost of this action be levied against Defendants; and,

(d) That Plaintiff be awarded such other and further relief as this Court deems just and proper.

                Respectfully submitted,
                WARSHAUER LAW GROUP, P.C.

                By: _____
                Michael J. Warshauer
                Georgia Bar No. 018720
                Trent Shuping
                Georgia Bar No. 159083

2740 Bert Adams Road
Atlanta, GA 30339
(404) 892-4900
(404) 892-1020 Fax
mjw@warlawgroup.com
tss@warlawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **First Amended Complaint for Damages** upon all parties to this matter via the CM/ECF system for electronic notification to all counsel of record.

| | |
|---|---|
| Johnathan T. Krawcheck, Esq. | Patrick W. Schmidt, Esq. |
| Brannon J. Arnold, Esq. | Raymond D. Jamieson, Esq. |
| Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC | Quarles & Brady, LLP |
| 3344 Peachtree Road, Suite 2400 | 411 E. Wisconsin Avenue |
| Atlanta, GA 30326 | Suite 2350 |
| | Milwaukee, WI 53202-4426 |

This ___th day of April, 2019.

By: _____

Warshauer Law Group, P.C.
2740 Bert Adams Road
Atlanta, GA 30339
404-892-4900
404-892-1020 Fax